GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
JANE L. WESTBY
JACKSON STEPHENS
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Jane.westby@usdoj.gov
Jackson.stephens@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | |
|---|---|
| Plaintiff, | CR18-1786-TUC-JAS (DTF) |
| vs. | |
| Michael Feinberg, Betsy Feinberg, | **MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OR ARGUMENT OF VICTIM/INVESTORS' FAULT** |
| Defendants. | |

Plaintiff, United States of America, by and through its attorneys, Glenn B. McCormick, Acting United States Attorney for the District of Arizona, and Jane L. Westby and Jackson Stephens, Assistant U.S. Attorneys, hereby files this motion respectfully moving *in limine* for an order precluding the Defendants from presenting evidence, cross-examination, or argument that victim/investors were at fault because they were experienced investors who either assumed the risk and/or should have known better than to invest in the Defendants' scheme. Any reference to this subject matter should be precluded because it is not relevant, has no probative value and does not survive a 403 balancing test because of the substantial prejudice and significant confusion this subject matter would create to the pertinent issues that must be decided by the jury during this trial.

On September 5, 2018, a federal grand jury returned an indictment charging the defendants with conspiracy and wire and securities fraud. From 1997 until well into 2013, the defendants operated a computer software company called Catharon Productions, Inc. and Catharon Software Corp. ("Catharon") and purported to be developing a new, user-friendly programming language that would allow applications to be distributed via the internet.

The defendants enticed investors with promises of extraordinary returns, based on the growth of the internet. In furtherance of their scheme, the defendants executed promissory notes and stock offerings with their victims to make the investments look legitimate. They sought investment from members of their synagogue, gun club, and the Sedona Women's Club. These investors did not have backgrounds in technology or engineering. All told, the Feinbergs raised approximately $4.9 million in investment from approximately 300 investors. After nearly 15 years of "development," no software was ever released.

This motion seeks to preclude the defendants from blaming the victim/investors, alleging that victims were experienced investors who could assume the risk or should have known better than to invest in Defendants' scheme. However, at issue in this case is the Defendants' – and not the victims' - mental state.

Wire fraud and security fraud's materiality element is an objective standard. Therefore, any claims that a specific victim/investor: (1) was negligent in failing to detect the Defendants' fraud, (2) or able to assume the risk of Defendants' false investments is irrelevant under Rule 401, Federal Rules of Evidence. Moreover, any probative value of these claims substantially outweighed by the danger of unfair prejudice, misleading the jury, and confusion of the issues under Rule 403, Federal Rules of Evidence.

**MEMORANDUM OF POINTS AND AUTHORITIES**

During video the deposition of victim J. V. G., Defense counsel for Defendant Betsy Feinberg cross examined victim/investor J. V. G. about being an experienced investor. (Exhibit A, Excerpt of Video Deposition of J. V. G.., September 27, 2021, pp. 41-44. Specifically, Defense counsel cross examined J. V. G. that he was an attorney (Exhibit A at p. 41), his oversight of

investments at Erie Insurance Group (p. 42), and his familiarity with "terms or concepts of investments called risks, warnings, or investment disclaimers." (Exhibit A at p. 43).

It is clear that the defense attorney, in conducting this line of questioning, was implying that the victims were partially at fault for pursing these "investments." Further, the defense attorney was suggesting that the victim's assumption of the risk or heightened level of sophistication or experience is somehow relevant to the charges at issue. However, this line of questioning has no relevance to any material issue in this case.

### A. Because the standard of materiality for both wire fraud and securities fraud is an objective one, the investment experience of a specific victim is irrelevant.

Wire fraud has a materiality requirement - the statements made by the defendants must be materially false. 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5; 18 U.S.C. §§ 1343, In *Neder v. United States*, the Supreme Court held that the United States does not have to prove "actual reliance" on a false statement to satisfy the materiality requirement of wire fraud. 527 U.S. 1, 24-25 (1999). Instead, a false statement is material if it has "a natural tendency to influence, or is *capable of influencing*, the decision of the decision making body to which it was addressed." *United States v. Guadin*, 515 U.S. 506, 509 (1995) (emphasis added).

Because this standard only requires that the statement be *capable* of influencing the decision, the Ninth Circuit has held that "a misrepresentation may be material without inducing any actual reliance. What is important is the intent *of the person making the statement* that it be in furtherance of some fraudulent purpose." *United States v. Blixt*, 548 F.3d 882, 889 (9th Cir. 2008) (emphasis added; quotation omitted). Stated differently, "'capable of influencing' is an objective test, which looks at 'the intrinsic capabilities of the false statement itself, rather than the possibility of the actual attainment of its end.'" *United States v. Peterson*, 538 F.3d 1064, 1072 (9th Cir. 2008) (quoting *United States v. Facchini*, 832 F.2d 1159, 1162 (9th Cir. 1987) ("Materiality, therefore, is not measured by effect or magnitude.")).

Likewise, securities fraud also requires a showing of materiality which is an objective standard. Securities fraud requires a showing that the defendant willfully used a device or scheme to defraud someone, made an untrue statement of a material fact, failed to disclose a material fact that resulted in making the defendant's statements misleading, or engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person. 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5; Ninth Circuit Jury Instruction 9.9. A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making the decision to purchase or sell securities. *Id.*

Materiality as an element of securities fraud is an objective standard. *U.S. v. Reyes*, 577 F.3d 1069, 1075 (9th Cir. 2009). To be material, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having altered the "total mix" of information available. *Id*. Materiality depends on the significance that a reasonable investor would assign to the withheld or misrepresented information. *Id.*

As set forth in the United States' motion, circuit courts of appeal have precluded defenses based on blaming the victim. *See, e.g., United States v. Winkle*, 477 F.3d 407, 418 (6th Cir. 2007) (FDIC report detailing that bank CEO was allowing defendants check kiting scheme to go forward to avoid detection of embezzlement by CEO was properly precluded under Federal Rules of Evidence 401 and 403); *United States v. Thomas*, 377 F.3d 232, 240-41 (2nd Cir. 2004) ("We refuse to accept the notion that " 'the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim' "; defense properly prohibited from cross examining representative of victim lender about lack of caution and diligence in dealing with defendant).[1]

---

[1] *See also, e.g., United States v. Colton*, 231 F.3d 890, 903 (4th Cir. 2000) (precluding evidence that victim lender was negligent in failing to request additional information that may have revealed fraud); *United States v. Coyle*, 63 F.3d 1239, 1244 (3rd Cir. 1995) ("The negligence of the victim in failing to discovery the fraudulent scheme is not a defense to criminal conduct."); *United States v. Biesiadecki*, 933 F.2d 539, 544 (7th Cir. 1991) (excluding evidence of lender's conduct because it "would have improperly shifted the jury's attention away from the knowledge and intent of the [defendant] and focused instead on the beliefs of the victims of the alleged scheme to defraud"); *United States v. Moore*, 923 F.2d 910, 917 (1st Cir. 1991); approving jury instructions stating , "[I]t is not a defense that the bank might have prevented its losses had it better internal controls or procedures."); *United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) (rejecting defense based on victim's failure to have taken steps to uncover fraudulent scheme: "The laws protecting against fraud are most needed to protect the careless and the naive from lupine predators, and they are designed for that purpose.").

Because the materiality element focuses on the intent of the person who made the false statements - and not the person to whom the false statements were made - the law does not permit defendants to attempt to shift the jury's focus away from himself or herself and onto the victims.

**B.  Evidence, cross-examination, or argument that the victims are to blame carries with it a risk of unfair prejudice, confusing the issues and misleading the jury.**

Federal Rule of Evidence 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  It is the position of the government that allowing evidence, cross-examination, or argument -- that victims who are experienced investors assume the risk of fraud or were at fault for failing to detect the fraud is irrelevant, prejudicial, and misleading.  Any such evidence, cross-examination, or argument is properly precluded.  *United States v. Callipari*, 368 F.3d 22, 36 (1st Cir.2004) (vacated on other grounds) (court properly limited questioning and argument where defendant was trying to blame the victim for being careless and not detecting the fraud). Whether the victim was careless, negligent, or even reckless in entering these "investments" has no bearing on any element of the charged offenses.

The advisory note to FRE 403 defines unfair prejudice as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's note.  The government's concern here is that evidence tending to blame the victim/investors would mislead the jury into believing that experienced investors cannot ever be victims of fraud.   Put another way, Defendant's defense distills down to an improper argument that its okay to lie to some investors if they are "sophisticated" or "accredited" investors.  This argument is not a defense to wire fraud because whether the victims were sophisticated or should have made better decisions about pursing these "investments" has no bearing concerning any element of the offense.

Additionally, allowing the Defendant to blame the victim/investors will lead to further issues and unduly prolong the trial.  Professor Wigmore defines the phrase "confusion of the issues" within the context of FRE 403 as:

> [t]he notion here is that, in attempting to dispute or explain away the evidence thus offered, new issues will arise as to the occurrence of the instances and the similarity of conditions, new witnesses will be needed whose cross-examination and impeachment will lead to further issues; and thus that the trial will be unduly prolonged, and the multiplicity of minor issues will be such that the injury will lose sight of the main issue, and the whole evidence will be only a mass of confused data from which it will be difficult to extract the kernel of controversy.

2 Wigmore, Evidence, 3d ed. 1940, § 443, p. 428.

For example, Defense counsel for Defendant Michael Feinberg raised a host of other irrelevant issues when he cross examined J. V. G.. by asking about whether he kept extensive documents he kept that were sent to him by Catharon, "And you kept all of those documents you received from Catharon?" "I did." "And you turned that over to the U.S. Attorney?" "I did." "And it was 6 inches thick?" "I never measured it." "You don't recall in an interview… that it was about 6 inches thick?" "I don't remember saying 6 inches, but it was pretty big.  It filled the whole box." "Over 400 pages would you estimate?" "I have no idea; a box full.").

Specifically, this type of cross-examination would raise irrelevant issues that the government would be obligated to address so that the jury would not be confused about whose state of mind is relevant and material to the instant offense and whether reliance is a defense. *See e.g. Callipari*, 368 at 36–37 (upholding district court's decision to limit defendant's line of questioning during cross-examination based "on the well-founded concern that suggestions of 'blaming the victim' might turn into a 'fishing expedition' that would confuse the issues for the jury and unfairly prejudice the government's case.").

**C.     Conclusion**

For the foregoing reasons, the United States urges this Court to address this issue pre-trial and to preclude this type of evidence at trial - whether in the form of affirmative evidence, cross-examination of the United States' witnesses, or otherwise by inference or argument. The Government has conferred with Defense Counsel. Counsel for Betsy Feinberg has not yet responded to inquiries. Counsel for Michael Feinberg has indicated his objection.

RESPECTFULLY submitted this 1st day of October 2021.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

*/s/ Jackson Stephens*
Jackson Stephens
Jane L. Westby
Assistant U.S. Attorneys

Copy of the foregoing served
electronically or by other means,
this 1st day of October 2021 to:

All ECF Participants